# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TIFFANY TOWERS, ASHLEY
VERDEROSA, LINDSEY VERDEROSA,
and HEATHER VERDEROSA by and
through her mother and next friend
Wendy Verderosa,**

**Plaintiffs,**

**-vs-**                                          **Case No.  6:09-cv-1318-Orl-28GJK**

**LIFE INSURANCE COMPANY OF
NORTH AMERICA,**

**Defendant.**
_____

# ORDER

Plaintiffs bring the instant action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., against Defendant, Life Insurance Company of North America ("Defendant").  Plaintiffs contend that Defendant improperly denied a claim for accidental death benefits following the death of their father.[1]  The case is currently before the Court on the parties' cross-motions for summary judgment,[2] which the parties agree are

_____

[1]This case was initially brought solely by Tiffany Towers as personal representative of the estate of the decedent, Albert Verderosa.  However, Verderosa had designated his four daughters—one of whom is Tiffany Towers—as the beneficiaries of the accidental death policies at issue, and therefore the four daughters—not the estate—are the proper Plaintiffs in this case.  They have been substituted as Plaintiffs.  (See Docs. 41-44).

[2]The pertinent filings are:  Plaintiff's Motion for Summary Judgment (Doc. 26); Plaintiff's Memorandum of Law in Support (Doc. 27); Defendant's Motion for Summary Judgment (Doc. 28); Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 29); Plaintiff's Response to Defendant's Dispositive Motion for

dispositive of this ERISA appeal.  Having considered the record, argument of counsel,[3] and pertinent law, the Court concludes that Plaintiffs' motion must be denied and Defendant's motion must be granted.

## I.  Background

Prior to his death, Albert Verderosa ("Verderosa") was employed by Northrop Grumman Corporation as an engineer and was an insured participant in two group accidental death policies ("the Policies")—employee benefit plans covered by ERISA.  The Policies provided a combined accidental death benefit of $380,000, and Verderosa designated his four daughters—the Plaintiffs herein—as the beneficiaries thereunder.

At approximately five o'clock on the afternoon of March 10, 2007, fifty-year-old Verderosa was found unresponsive in bed at his home and shortly thereafter was declared dead by emergency responders.  He had last been seen alive approximately twenty-four hours earlier.

An autopsy was conducted two days after Verderosa's death, and the autopsy report noted the cause of death as "combined drug intoxication," that "other significant conditions" were dilated cardiomyopathy and pneumonia, and that the manner of death was "accident." (A.R.[4] 0343).  The report listed among its findings "[t]oxically high fentanyl and presence of

_____

Summary Judgment (Doc. 30); and Defendant's Reply to Plaintiff's Response to Defendant's Dispositive Motion for Summary Judgment (Doc. 34).

[3]The Court heard oral argument on the motions on February 7, 2011.  (See Mins., Doc. 40).

[4]Citations to the administrative record (Attach. to Doc. 36) are denoted by "A.R." follwed by the page number.

other drugs and ethanol." (Id.).  The report also noted:  "Deceased had a history of unspecified drug and alcohol abuse.  He recently suffered from pneumonia."  (Id.).

As reflected in medical records, prior to his death Verderosa suffered from conditions including back pain, anxiety, sleep apnea, and hypertension, and he had several active prescriptions for medication, including Duragesic (fentanyl), Librium (chlordiazepoxide HCl), and Lortab (hydrocodone-acetaminophen).  The post-death toxicology report indicated that no hydrocodone was detected in Verderosa's blood, but positive findings of benzodiazepines, fentanyl, diphenhydramine, nordiazepam, chlordiazepoxide, and ethanol were noted.  (Id. 0347).  The Brevard County medical examiner listed the cause of death on Verderosa's death certificate as "[c]ombined drug intoxication."  (Id. 0386).  In a preprinted box for "[o]ther significant conditions contributing to death but not resulting in the underlying cause given," the death certificate indicates "dilated cardiomyopathy, pneumonia."  (Id.).  In the box labeled "describe how injury occurred," the death certificate states:  "Abused fentnyl [sic] and used multiple other drugs and alcohol."  (Ex. B to Compl.).[5]

Under the Policies, accidental death benefits are payable if the insured dies "directly and independently of all other causes from a Covered Accident."  (A.R. 0460, 0517).  "Covered Accident" is defined as "[a] sudden, unforeseeable, external event that results, directly and independently of all other causes, in [death] and . . . is not contributed to by disease, Sickness, mental or bodily infirmity . . . [and] is not otherwise excluded under the

---

[5]The copy of the death certificate in the administrative record is cut off at the bottom, and the line for "describe how injury occurred" does not appear on that copy; however, the copy of the complete death certificate that is attached to the Complaint (Doc. 1) includes that line.

terms of [the Policies]." (Id. 0449, 0504).  The Policies also contain several exclusions, including the "drug exclusion," which excludes from coverage any death "which, directly or indirectly, in whole or in part, is caused by or results from . . . voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage," and the "sickness/medical treatment" exclusion, which excludes from coverage any death "which, directly or indirectly, in whole or in part, is caused by or results from . . . Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof (except surgical or medical treatment required by an Accident)." (Id. 0453, 0510).

Plaintiffs made a claim for accidental death benefits under the Policies, but after receiving and reviewing Verderosa's medical records, Defendant denied the claim. Defendant advised Plaintiffs of the denial of the claim in a letter dated December 18, 2007. (See id. 0270-0273).  In the denial letter, Defendant quoted the policy provisions noted above—the definition of "Covered Accident" and the exclusions for voluntary ingestion of drugs and for sickness/medical treatment—and noted the autopsy findings.  (See id.). Additionally, Defendant noted that Verderosa's medical records indicated that in September 2006, one of Verderosa's doctors had advised Verderosa that he was using too much Duragesic and they had discussed that issue at length.  (Id. 0271).

Defendant then explained that it had determined that Verderosa "died as the result of his taking a combination of Fentanyl and his other prescribed medications," noting that "injuries that result from the medical treatment of his bodily infirmity is [sic] specifically excluded by these policies." (Id. 0272).  The letter went on to note that Verderosa's doctor

-4-

had counseled him about overusing his medication and stated that "[w]ith his history of overmedication and the medical counseling about this overmedication, any injuries, including death, would clearly be the foreseeable consequence of his actions, and therefore would not have been an accident as defined by these policies." (Id.).

The denial letter advised of a sixty-day period in which an appeal to Defendant could be filed, (id.), and on February 14, 2008, Plaintiffs, through counsel, administratively appealed the denial of benefits, (id. 0263-0264), asserting in pertinent part that Defendant was "not in possession of any information showing that [Verderosa] took his medication inconsistent with the [manner] in which it was prescribed." Additional medical records were submitted to Defendant in support of the appeal. (See id. 0036-0037). In assessing the appeal, Defendant sent Verderosa's medical records to a toxicologist, Frederick Fochtman, Ph.D. (See id. 0034). On October 8, 2008, Fochtman provided his assessment to Defendant. (Id. 0028-0030). Fochtman stated in part:

> The quantities of diphenhydramine, chlordiazepoxide, and fentanyl found in Mr. Verderosa's post mortem blood would not individually be considered toxic or fatal. Nordiazepam and norfentanyl are metabolites of chlordiazepoxide and fentanyl respectively. The nordiazepam concentration is greater than expected with a therapeutic dose of chlordiazepoxide, however it would not be a toxic or fatal concentration. Mr. Verderosa's post mortem blood contained 0.085% ethanol. The ethanol would contribute to the overall CNS depressant effect of the combined depressant effect of the other drugs present. However, in an alcohol tolerant person this effect would be relatively minimal. It was reported that Mr. Verderosa had a history of "unspecified drug and alcohol abuse" and that he recently had pneumonia.
> From the medical records there is an indication that Mr. Verderosa was chronically using hydrocodone with acetaminophen for many years. Chronic use of acetaminophen

can lead to liver damage and compromised metabolism.  This may explain the anomaly of the low concentration of chlordiazepoxide and the higher than expected concentration of the metabolite, nordiazepam.

It is my opinion that Mr. Verderosa had not taken any greater quantity of prescribed drugs tha[n] was recommended by his health care [sic].  I would agree with the Medical Examiner's report that his death was an accident.  It is likely that a combination of his poor health (pneumonia and sleep apnea) plus the combined CNS depressant effect of the drugs in his system led to his death.

(Id. 0029-0030).

Two weeks later, Defendant advised Plaintiffs that their appeal had been denied.  (Id. 0023-0026).   In  the  appeal  denial  letter,  Defendant  quoted  the  definition  of  "Covered Accident" and the sickness/medical treatment exclusion but did not, as it had in the initial denial letter, quote or mention the drug exclusion.  (Id. 0023-24).  The letter noted that Defendant had sent records to Dr. Fochtman for review, and the letter quoted portions of Fochtman's report.  (Id. 0024-0025).  The letter concludes:  "This policy, as quoted previously, will not pay benefits for loss which directly or indirectly, in whole or in part, is caused by or results from sickness, disease or bodily infirmity.  Our review determined that Mr. Verderosa's death was contributed to by his pneumonia and sleep apnea.  Therefore, . . . we have determined that no benefits are payable . . . ."  (Id. 0025).

Plaintiffs filed this lawsuit on July 31, 2009, (Doc. 1), seeking judicial review of Defendant's decision to deny benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), which provides in pertinent part that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of the plan."  The parties' cross-motions for summary judgment are now ripe for ruling.

-6-

## II.  ERISA Review Standards

"ERISA does not set out standards under which district courts must review an administrator's decision to deny benefits."  Doyle v. Liberty Life Assur. Co. of Boston, 542 F.3d 1352, 1355 (11th Cir. 2008).  However, case law establishes that the appropriate standard of review depends on whether the ERISA plan at issue affords discretion to the plan administrator.  See id. at 1355-56 (discussing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).

In Firestone, the Supreme Court held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Id.  In the instant case, it is undisputed that Defendant was not vested with discretion in reviewing claims and that the appropriate standard of review is the de novo standard.  Application of this standard requires this Court "to determine whether the claim administrator's benefits-denial decision is 'wrong' (i.e., the court disagrees with the administrator's decision)."  Doyle, 542 F.3d at 1356 (quoting Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1138 (11th Cir. 2004)).  If the Court determines that Defendant's decision to deny benefits was "wrong"—that is, if the Court disagrees with that decision—then Plaintiffs will prevail, and if the Court determines that Defendant's decision was not "wrong," Defendant will prevail.[6]  The parties also agree that the Court's review is

_____

[6]The Eleventh Circuit Court of Appeals has developed a six-step analysis to be applied in reviewing ERISA claims; the progression of the steps depends on whether the administrator was vested with discretion and on whether the administrator operated under a conflict of interest.  See Doyle, 542 F.3d at 1356-57.  Because it is undisputed that

limited to the evidence in the administrative record.  (See Doc. 27 at 4; Doc. 28 at 9).

### III.  Analysis

"A plaintiff suing under [29 U.S.C. § 1132(a)(1)(b)] bears the burden of proving his entitlement to contractual benefits."  Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998).  "But, if the insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage."  Id.  Moreover, the majority view is that the burden of proving the application of an exception to a policy exclusion is on the insured.  See LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir. 1997); E.I. duPont de Nemours & Co. v. Allstate Ins. Co., 693 A.2d 1059, 1061 (Del. 1997).

Defendant argues that the circumstances of Verderosa's death do not come within the Policies' coverage because Verderosa's death was not caused by a "Covered Accident" "directly and independently of all other causes."  Defendant further argues that even if Verderosa's death is found to be within the terms of "Covered Accident," the exclusion for injuries caused by medical treatment applies and supports the denial of benefits.  Plaintiffs

---

Defendant was not vested with discretion, only the first two steps come into play here. These two steps, as stated in Doyle, are:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

Id. at 1356 (quoting Williams, 373 F.3d at1138).

dispute Defendant's assertions and argue that the evidence in the administrative record does not support the denial of benefits.

A.  "Directly and Independently"

Defendant first argues that Verderosa's death is not within the terms of coverage of the Policies because it did not occur "directly and independently of all other causes" and instead, his preexisting health condition contributed to the death.  Plaintiffs, however, assert that the record evidence does not support denial of coverage on this basis under controlling law.

The parties recognize that while some circuits, including the Tenth and the Sixth, apply "directly and independently" policy language literally and find no coverage if a preexisting condition contributed in any degree to the injury or death at issue,[7] the Eleventh Circuit has adopted the more insured-friendly approach endorsed by the Fourth and Ninth Circuits.  In Adkins v. Reliance Standard Life Insurance Co., 917 F.2d 794, 796 (4th Cir. 1990), the Fourth Circuit noted that "in order to recover under such policies . . . with such a stringent construction, a claimant would have to be in perfect health at the time of his most recent injury before the policy would benefit him, and that, of course, is a condition hardly obtained, however devoutly to be wished."  The Adkins court then adopted the following standard:  "'[A] pre-existing infirmity or disease is not to be considered as a cause unless it substantially contributed to the disability or loss. . . . [A] "pre-disposition" or "susceptibility"

---

[7]See Pirkheim v. First Unum Life Ins., 229 F.3d 1008 (10th Cir. 2000), and Criss v. Hartford Accident & Indem. Co., No. 91-2092, 1992 WL 113370 (6th Cir. May 28, 1992), discussed in Dixon v. Life Ins. Co. of N. Am., 389 F.3d 1179, 1183 (11th Cir. 2004).

to injury, whether it results from congenital weakness or from previous illness or injury, does not necessarily amount to a substantial contributing cause. A mere "relationship" of undetermined degree is not enough.'" Id. at 797 (quoting Colonial Life & Acc. Ins. Co. v. Weartz, 636 S.W.2d 891, 894 (Ky. Ct. App. 1982) (alterations in original); accord Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1028 (4th Cir. 1993) (applying Adkins test and agreeing with district court's conclusion that a "mere 'relationship' of undetermined degree" between decedent's predisposition and her death was not sufficient to defeat accidental death coverage).

The Ninth Circuit adopted the Adkins test in 1996, see McClure v. Life Ins. Co. of N. Am., 84 F.3d 1129, 1136 (9th Cir. 1996), and the Eleventh Circuit did so eight years later in Dixon v. Life Insurance Company of North America, 389 F.3d 1179 (11th Cir. 2004). The Dixon court agreed with the Adkins court's reasoning that a strict interpretation of the "directly and independently" language would render the policy coverage almost meaningless, and the Eleventh Circuit explained that "[t]he 'substantially contributed' test gives the exclusionary language reasonable content without unreasonably limiting coverage." Id. at 1184.

While this governing test is easy to recite, it can be difficult to apply. Indeed, the parties in the instant case vigorously disagree as to the proper outcome of applying this "substantially contributed" standard to the facts of this case.

Defendant argues that because the "directly and independently" language is in a coverage provision rather than merely in an exclusion and the burden of establishing coverage is on the insured, Plaintiffs bear the burden of establishing that Verderosa's

preexisting health condition did not "substantially contribute" to his death.  Defendant further asserts that Fochtman's opinion that Verderosa took the prescription drugs in accordance with the prescribed dosage establishes that the reason Verderosa died as a result of the course of prescription drugs is his preexisting health condition; Defendant essentially argues that if not for Plaintiff's poor health, the prescribed dosage would not have killed him. Defendant contends that the medical examiner's report and Fochtman's report clearly state that Verderosa passed away because of his preexisting condition and susceptibility combined with taking the medication.   Defendant argues that the listing of "significant conditions contributing" on the death certificate is enough to establish "substantially contributed."

Plaintiffs, on the other hand, argue that there is no quantification in the benefit denial letters or the administrative record of the level of contribution of Verderosa's preexisting health condition to his death and that Defendant improperly denied benefits based on "contribution" rather than "substantial contribution" of preexisting conditions.  Plaintiffs point out that the only two possible sources of any such quantification are the medical examiner and Fochtman, neither of whom opined on the level to which one or more of Plaintiff's conditions contributed to his death.  Plaintiffs also note that the death certificate and Fochtman's report do not even list the same conditions as the "contributing" conditions—the death certificate lists dilated cardiomyopathy and pneumonia, whereas Fochtman's report lists sleep apnea and pneumonia.  Additionally, Plaintiffs assert that they should not have to rule out every possible health issue as a contributing cause in order to recover under the policy, which they assert is the upshot of Defendant's position as to Plaintiffs' burden in this

case.

Considering the evidence in the administrative record, the Court agrees with Plaintiffs that the level of contribution of Verderosa's preexisting conditions to his death has not been quantified. As noted earlier, "a mere relationship of undetermined degree" between decedent's predisposition and his or her death is not sufficient in this circuit to defeat accidental death coverage. The record in this case contains only unquantified statements as to causation. In its appeal denial letter, Defendant stated that there was no coverage because "Verderosa's death was contributed to by his pneumonia and sleep apnea." (A.R. 0025). Defendant did not state that the death was "substantially contributed to" by any conditions—only that it was "contributed to" by pneumonia and sleep apnea as opined by Fochtman. Under the law of this circuit, this is not an appropriate reason for denying coverage but instead is a statement of "a mere relationship of undetermined degree." And, the Court cannot discern from the record evidence any means of determining the degree of the causal relationship. Therefore, the denial of accidental death benefits cannot be upheld on this basis.[8]

---

[8]Moreover, assuming arguendo that Plaintiffs were required to affirmatively negate a causal link with regard to each of Verderosa's preexisting conditions, Plaintiffs did not have an opportunity to present evidence on that point. The initial denial of benefits did not rely on preexisting conditions contributing to Verderosa's death but on medical treatment and overuse of drugs. Plaintiffs challenged this second basis successfully when the Fochtman report stated that Verderosa had taken the drugs as prescribed. Defendant then affirmed the denial of benefits, citing the contribution of preexisting conditions. After the denial by Defendant of their administrative appeal, Plaintiffs had no further occasion to submit evidence to establish the level of contribution of preexisting conditions—a basis for denial that appeared for the first time in the appeal denial letter. Plaintiffs were not put on notice that benefits were being denied based on "contribution of infirmity" until their administrative appeal was denied; thus, there is no way that Plaintiffs could have submitted anything

B.  Medical Treatment Exclusion

Defendant also argues that its denial of benefits should be affirmed because even if Plaintiffs are correct that Verderosa's "preexisting infirmities were not a substantial contributor," then Verderosa's death was caused by prescription drug treatment and is barred by the medical treatment exclusion of the Policies.  Again, this exclusion provides in pertinent part that "benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from . . . Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof (except surgical or medical treatment required by an Accident)."  (A.R. 0453, 0510).

In this lawsuit, Plaintiffs initially objected to Defendant's reliance on the medical treatment exclusion, arguing that Defendant was raising that exclusion for the first time in its summary judgment motion.  (See Resp. to Def.'s Summ. J. Mot., Doc. 30, at 8).  However, during oral argument Plaintiffs withdrew that objection and acknowledged that Defendant had cited the medical treatment exclusion its initial denial letter (A.R. 0270-0273).  Indeed, in that letter Defendant noted that Verderosa had prescriptions for the drugs that he had taken and explained that "injuries that result from the medical treatment of his bodily infirmity [are] specifically excluded by these policies." (Id. 0272).[9]  Plaintiffs do not dispute that prescription drugs caused Verderosa's death or that prescription drug treatment is "medical treatment"

―――――――――――――

quantifying causation even if Defendant is correct that they were required to do so.

   [9]In their administrative appeal to Defendant, Plaintiffs did not challenge that basis for the initial denial; instead, they only challenged the contention that Verderosa took more medication than he had been prescribed.  (See A.R. 0264).

within the cited exclusion, but Plaintiffs note that the exclusion does not apply if the medical treatment was "required by an Accident." Plaintiffs assert that it is unclear whether the prescription drug treatment that Verderosa was receiving was "required by an Accident," and they argue that it is Defendant's burden to establish that such was not the case.

As earlier noted, while the insurer bears the burden of establishing that a policy exclusion bars coverage, the insured bears the burden of establishing the applicability of an exception to an exclusion. See, e.g., LaFarge, 118 F.3d at 1516. The "except surgical or medical treatment required by an Accident" portion of the policy is an exception to the medical treatment exclusion, and Plaintiffs bear the burden of establishing its applicability. They have not done so, nor have they attempted to do so. Thus, the medical treatment exclusion has not been shown to be inapplicable, and it applies and bars coverage for Verderosa's death. On this basis, the decision of Defendant to deny accidental death benefits must be affirmed.

IV. Conclusion

In sum, the Court does not find a basis for concluding that Verderosa's medical condition "substantially contributed" to his death; the administrative record does not contain any competent evidence quantifying any level of contribution. However, Plaintiffs have not met their burden of establishing that an exception to the medical treatment exclusion applies, and the denial of accidental death benefits is affirmed based on application of that exclusion. Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 26) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Doc. 28) is **GRANTED**.

3.  The Clerk is directed to enter a judgment providing that Defendant's decision to deny accidental death benefits to Plaintiffs is affirmed and that Plaintiffs shall take nothing from Defendant in this action. Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida this 25th day of August, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record